**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MONICA FARES, SUZANNE WINOKUR, and GIL WINOKUR, individually and on behalf of all others similarly situated,** ) ) ) ) ) | |
| **Plaintiffs,[1]** ) ) | |
| **vs.** ) ) | **Case No. 24 C 4878** |
| **CHAR-BROIL, LLC,** ) ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Monica Fares and Suzanne and Gil Winokur purchased Char-Broil digital smoker grills after learning about the product's claimed easy and hands-off user experience. But they soon learned the products were defective. Fares and Mr. Winokur experienced electric shocks on multiple occasions when using their grills. Plaintiffs then learned that the Consumer Product Safety Commission had issued a recall for certain models of Char-Broil digital smokers, including the models they had purchased. Plaintiffs participated in the recall process and received repair kits. They contend, however, that the repair was ineffective and that their grills remained dysfunctional with safety defects.

---

[1] The Winokurs previously filed a separate lawsuit that was transferred to this district and was then consolidated with Fares' case filed in this district. The Winokurs' separate lawsuit was then terminated due to the consolidation. The Court has therefore added the Winokurs to the caption in the present case.

Plaintiffs have sued Char-Broil on behalf of a putative nationwide class of customers who purchased the recalled models of the digital smoker grills.  They assert claims for breach of the implied warranty of merchantability (count 1), violation of various state consumer fraud acts (count 2), violation of the Illinois Consumer Fraud and Deceptive Practices Act (count 3), unjust enrichment (count 4), breach of express warranty (counts 5 and 8), and violation of New York General Business Law Sections 349 and 350 (counts 6 and 7).

Defendant Char-Broil has moved to dismiss all of the plaintiffs' claims.

## Background

Char-Broil develops and sells outdoor cooking products, including digital electric smokers.  Monica Fares and Suzanne and Gil Winokur purchased Char-Broil smokers at different times.

Fares, who lives in Lake Villa, Illinois, purchased via Amazon.com a Deluxe Black Digital Electric Smoker (model number 19202101) on May 9, 2023 for $349.99, plus tax.  A few years earlier, on October 7, 2019, the Winokurs also purchased via Amazon.com a Char-Broil Electric Smoker (model number 14202002) for $123.19 plus tax, for a total of $134.12.

Fares alleges that before purchasing the grill, she viewed "information about the [grill] on Amazon.com, on marketing material, and on the [grill's] packaging and labeling, including safety information."  Am. Consol. Compl. ¶ 76 (hereafter "Compl.").  Similarly, the Winokurs reviewed information about the product before purchasing it, including its attached safety information.  *Id*. ¶ 97.

Both of the grills had defects that caused Fares and the Winokurs to experience

electric shocks multiple times when using them. They were not alone in experiencing these problems. On or about February 15, 2024, the U.S. Consumer Product Safety Commission (CPSC) announced a safety recall for Char-Broil's digital electric smokers due to the risk of electric shocks they posed to consumers. By that time, Char-Broil had received at least seventy-nine complaints from consumers who had experienced electric shocks when using the grills. Char-Broil proceeded to issue a recall notice and offered customers the option of ordering a free repair kit. The repair kit included a ground fault circuit interrupter plug (GFCI), a clamshell enclosure, and a cable clamp. Customers were told to test the GFCI plug each and every time before using the smoker. *Id.* ¶¶ 60-61.

After experiencing the shocks, the Winokurs called Char-Broil to report the malfunction, and the company's customer service team opened a case file to help resolve the issue. The Winokurs learned about the recall from an Amazon Product Safety team on February 15, 2024. They participated in the recall in or about May 2024. But they allege that the repair kit did not fix the grill's problems, and they say they are still unable to use the grill due to safety defects.

Fares also participated in the recall and received her repair kit in April 2024. She says, however, that when she attempted to plug in the repair kit's electrical adapter, it blew a fuse at the outlet, which she says left the product unsafe to use.

Plaintiffs allege that Char-Broil marketed the smokers on various websites and product descriptions as offering a "set and forget" experience for consumers, promising easy-to-use smokers that the user would not need to monitor. *Id.* ¶¶ 4, 44, 46. They contend that they relied on these representations in purchasing the products and would

3

not have bought them otherwise.

Plaintiffs have sued Char-Broil on behalf of a putative class of similarly situated persons. First, they allege that Char-Broil breached the implied warranty of merchantability because the grills had safety defects despite Char-Broil advertising the grills as free from defects and fit for their ordinary purpose (count 1). Second, they allege violations of state consumer fraud laws, alleging that Char-Broil engaged in deceptive and/or unfair conduct by making deceptive representations and omissions regarding the safety and utility of the digital electric smokers and the suggested repair kits (count 2). Third, plaintiffs contend that Char-Broil violated the Illinois Consumer Fraud and Deceptive Practices Act (ICFA) by engaging in unfair and deceptive conduct and advertising the digital electric smokers as having characteristics they did not include (count 3). Fourth, they seek restitution based on Char-Broil's alleged unjust enrichment from selling defective products (count 4). Fifth, plaintiffs sue for breach of express warranties (Counts 5 and 8). Sixth and lastly, they allege violations of New York General Business Law Sections 349 and 350 (Count 6 and 7).

## Discussion

In its motion to dismiss, Char-Broil cites six grounds. First, it argues that this Court should invoke the doctrine of primary jurisdiction and dismiss plaintiffs' claims in favor of any remedies available via the CPSC. Second, Char-Broil argues that a disclaimer in its express warranty bars plaintiffs' implied warranty claims. Third, it argues that plaintiffs' express warranty claims fall short because it complied with the terms of the written warranty. Fourth, Char-Broil argues that plaintiffs' ICFA claim should be dismissed because they did not plead it with the requisite particularly. Fifth, it

4

argues that plaintiffs have not properly pleaded a claim of unjust enrichment.  Sixth, Char-Broil argues that even if plaintiffs' claims survive these challenges, the Court should strike their class allegations.

To survive Char-Broil's motion to dismiss, the plaintiffs "must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*  A plaintiff may not rely on labels and conclusory allegations; he or she must plead "particularized factual content."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019).  Moreover, "[i]f the claim rests on allegations of deceptive conduct, then Rule 9(b) applies, and the plaintiff must plead with particularity the circumstances constituting fraud. . . .  Specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud."  *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (internal quotation marks omitted).

## A.    Primary jurisdiction

Char-Broil argues that this Court should invoke the primary jurisdiction doctrine because plaintiffs ask "this Court to assess the adequacy of the CPSC-approved remedy," an inquiry that Char-Broil contends is better left to the CPSC.  Def.'s Mem. in Support of Mot. to Dismiss at 4.

Despite its name, the doctrine of "primary jurisdiction" is not actually a jurisdictional bar.  *United States ex rel. Sheet Metal Workers Int'l Ass'n, Loc. Union 20 v.*

*Horning Invs., LLC*, 828 F.3d 587, 592 (7th Cir. 2016). Rather, it is "a permissive doctrine that applies when resolving a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In such cases, a federal court *may* stay the proceeding to allow the agency to take the first look at the case." *Id.* (emphasis added) (internal citations and quotation marks omitted). The doctrine's aim is to balance the "proper relationships between the courts and administrative agencies charged with particular regulatory duties" and promotes consistency and uniformity. *See Pennington v. Zionsolutions LLC*, 742 F.3d 715, 719-20 (7th Cir. 2014); *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991).

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Ryan,* 935 F.2d at 131. In determining whether to abstain under the primary jurisdiction doctrine, courts consider:

> (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense.

*Gilmore v. Southwestern Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001). Courts considering these factors have declined to apply the primary jurisdiction doctrine when plaintiffs are seeking economic damages or when the claims do not require an administrative agency's expertise or rely on proving violations of federal law but rather

6

involve state-law claims of the sort routinely resolved by courts. *See e.g., Horning Invs., LLC,* 828 F.3d at 592; *Ryan*, 935 F.2d at 132; *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, No. 22 C 1322, 2023 WL 3585759, at *7 (N.D. Ill. May 22, 2023) (Kennelly, J.).

The Court concludes that deferral to the CPSC is not called for here. Plaintiffs' claims arise under state law; they do not allege any violations of the CPSA or of any regulation promulgated by the CPSC or any other federal agency. Char-Broil contends that plaintiffs' complaint is premised upon an assertion that the CPSC's remedy was inadequate. That is not a fair characterization of the gist of plaintiffs' claims. Although plaintiffs do contend that the recall procedure did not solve the problems with the smokers, their core contention is not that the CPSC should have done more but rather that Char-Broil misrepresented the devices as functioning when in fact they were defective, *in spite of* and even after the recall process. Furthermore, although plaintiffs do request equitable relief, their primary demand is economic damages, relief that a court is well-suited to provide.

Nor do any of the policy reasons behind the primary jurisdiction doctrine exist here. This Court's rulings on plaintiff's claims, unrelated to CPSC policy and limited to plaintiffs' experiences with Char-Broil, will not lead to inconsistency or lack of uniformity because the Court need not apply any special expertise or knowledge better left to the CPSC. Plaintiffs' claims, including fraud and contract claims, involve issues the courts routinely address. And judicial economy will be served by providing plaintiffs the opportunity to bring their damages claim to "the only forum that can provide them, the court." *Ryan*, 935 F.2d at 132. Finally, because neither party points to any mechanism

for asserting a claim on these grounds before the CPSC (Char-Broil simply points out that plaintiffs have not reached out to CPSC but does not identify any existing process that CPSC employs to address such claims in the first place), dismissing the case under the primary jurisdiction doctrine will likely lead to substantial delay and added expense.

The Court therefore declines to apply the doctrine of primary jurisdiction.

**B.      Implied warranty claim**

Next, Char-Broil argues that its express written warranty covering the digital smokers, which limits the duration of any implied warranty to one year from the date of purchase, precludes the plaintiffs from asserting implied warranty claims.  It argues that because the disclaimer was in writing and conspicuous, the disclaimer was valid, and the Court must therefore dismiss the implied warranty claim (count 1).

Plaintiffs contend that the limitation is unconscionable.  And as they contend, when a party asserts an unconscionability challenge against a warranty disclaimer, courts typically provide the parties with an opportunity to develop the relevant facts. *See* 810 Ill. Comp. Stat. 5/2–302I(2) ("When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."); *see also Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1030 (N.D. Ill. 2008); *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 2609431, at *3 (N.D. Ill. June 9, 2014).  That is the appropriate course here.

The Court will bypass for now the question of whether Char-Broil's written disclaimer is sufficiently conspicuous, as it is more appropriate to address this point at

8

the same time the Court addresses the claim of unconscionability.

## C.  Illinois Consumer Fraud and Deceptive Practices Act (ICFA) claim

Plaintiffs contend in count 3 that Char-Broil violated the ICFA by engaging in deceptive and unfair conduct through selling defective and insufficiently tested digital smoker grills that it represented were fully functioning and simple to use.  First, they allege that Char-Broil engaged in deceptive conduct by representing that the digital smoker grills included functionality that they did not actually have.  For example, they contend that Char-Broil "advertised the Noticed Products as being able to safely smoke food placed inside without further action needed by the consumer."  Compl. ¶ 162.  And regarding the recall, plaintiffs contend that Char-Broil deceptively "notified consumers that if they participated in the recall and installed the GFCI plug onto the smoker, the smoker would be safe and useable [sic]."  *Id.* ¶ 164.  Second, plaintiffs assert that Char-Broil engaged in unfair conduct by placing the smokers into the stream of commerce and advertising them as safe to use without adequately testing or inspecting them.  *Id.* ¶¶ 18, 51, 66-68, 165.

To maintain a claim under the ICFA, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages."  *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).  Deceptive acts and unfair conduct are distinct categories of ICFA violations.  A plaintiff may premise an ICFA claim on one or both, but the standards for pleading each are different.  *Id.* at 738.

A claim of deceptive conduct under the ICFA requires a plaintiff to "state with

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must describe the "who, what, when, where, and how of the fraud." *See AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir.2011); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Still, "the precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta*, 761 F.3d at 737.

ICFA claims premised on unfair conduct are different. Rule 9(b) does not apply, and a plaintiff need only meet the less-stringent pleading standard under Rule 8(a). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). That said, if a plaintiff premises a claim of unfair conduct on a deceptive act, it may "sound[ ] in fraud" such that Rule 9(b)'s pleading requirements apply. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Char-Broil characterizes plaintiffs' ICFA claim as asserting deceptive conduct, and it contends that plaintiffs have not met the heightened pleading standard that applies to claims involving deceptive acts. In particular, it argues that plaintiffs' claims do not identify any specific misrepresentations or omissions upon which they claim to have relied when purchasing the products.

### 1.    Deceptive conduct

Plaintiffs have adequately alleged that Char-Broil engaged in deceptive conduct. In their complaint, plaintiffs include a list of advertisements and product descriptions that Char-Broil posted on a variety of platforms, including Charbroil.com, Amazon.com, Walmart.com, and Lowes.com. Compl. ¶¶ 35-47. These postings advertised the digital smoker grills as offering a "set and forget" feature as well as "error free" and easy

cooking.  Plaintiffs summarize the representations as essentially promising "potential consumers that Char-Broil Digital Electric Smokers would make it easy to cook food to the customer's desired internal temperature without the need for monitoring the [grill]." *Id*. ¶ 47.  Plaintiffs also contend that they bought the grills because they were looking for safe and easy-to-use digital electric smokers and that they relied on Char-Broil's representations promising these characteristics.  *Id*. ¶¶ 75-79; 96-100.

Char-Broil argues that plaintiffs have not identified the *exact* misrepresentation on which they claim to have relied.  This level of detail is not required.  Rule 9(b) requires the plaintiffs to "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff," but plaintiffs are not required to "provide the precise date, time, and location that [they] saw the advertisement or every word that was included on it."  *Camasta*, 761 F.3d at 737.

Fares and the Winokurs have identified the misrepresentations that they contend Char-Broil circulated.  They have also stated that they read these descriptions before purchasing the products.  Fares specifically states she read the product description on Amazon.com in addition to reading other marketing material, including the product's packaging and label.  Both plaintiffs highlight Char-Broil's allegedly false representation that the grill would do the job without the need for constant monitoring ("set and forget" feature) as the primary reason they purchased the product.  Both plaintiffs also contend that the products did not align with Char-Broil's representations because they caused electric shocks and, after the repair, still remained defective and unsafe and required constant monitoring.  These allegations are sufficient to satisfy Rule 9(b).

Char-Broil also takes issue with plaintiffs' assertion that they relied on defendant's misrepresentations, arguing that their allegations of reliance are too general. Def.'s Mem. in Support of Mot. to Dismiss at 7. But "'reliance is not an element of statutory consumer fraud.' Rather, it's the plaintiff's 'damage,' not his purchase, that must occur 'as a result of' the deceptive act or practice . . . it was enough . . . that the plaintiffs' purchases 'occurred after the allegedly fraudulent statements.'" *Vanzant*, 934 F.3d at 739 (internal citations omitted). Similarly, in this case, plaintiffs have alleged that they purchased the digital smoker grills based on Char-Broil's claims that the product offered a "set and forget" and easy cooking experience. The fact that plaintiffs have not pinpointed a particular statement upon which they relied does not defeat their claims, at least not on a motion to dismiss for failure to state a claim.

### 2. Unfair conduct

Because plaintiffs have successfully pleaded an ICFA claim premised on deceptive conduct, count 2 is not subject to dismissal. Thus, the Court need not address plaintiffs' allegations of unfair conduct, which give rise to a claim under ICFA even if the plaintiff does not allege deceptive conduct. The Court notes, however, that Char-Broil waited until its reply to challenge the adequacy of a claim premised on unfair conduct, even though the claim expressly included unfair conduct allegations. *See, e.g.*, Compl. ¶¶ 161, 165. As a result, Char-Broil likely forfeited this argument. *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020). That aside, plaintiffs' allegations that Char-Broil put the products into the marketplace without adequate testing are sufficient to state a claim for unfair conduct violative of ICFA.

For these reasons, the Court overrules Char-Broil's request to dismiss plaintiffs'

ICFA claim.

**D. Express warranty claims**

Char-Broil next argues that plaintiffs' express warranty claims (counts 5 and 8) fail because they do not identify any express representations that Char-Broil made about the digital electric smokers and because the company complied with its express warranty. Neither of these arguments is persuasive.

"To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 739 (N.D. Ill. 2015) (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.,* 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999)). Additionally, "a party must have privity to the contract before bringing a breach of express warranty claim." *Id.* (quoting *In re McDonald's French Fries Litig.,* 503 F.Supp.2d 953, 957 (N.D. Ill. 2007)).

As explained earlier, plaintiffs allege, multiple times throughout the complaint, that Char-Grill misrepresented the properties of digital smoker grills, including by stating that they functioned easily without requiring additional monitoring by the user. It allegedly advertised this feature as offering customers a "set and forget" experience. Compl. ¶¶ 35, 47, 76-79, 91-92, 96-100.

Char-Broil argues that "Plaintiffs do not identify *any* representations made about the capacity of their smokers or why they are unable to use it at the capacity it was allegedly advertised." Def.'s Mem. in Support of Mot. to Dismiss at 9. Char-Broil reads the complaint too narrowly. Plaintiffs incorporate all prior allegations into Count 5 of

their complaint.  *See* Compl. ¶ 186.  As the Court has discussed, these allegations do in fact delineate the representations and defects that plaintiffs assert.

In any event, at this stage in the proceedings, plaintiffs are not required to plead extensive evidentiary detail to support their express warranty claim.  *See Baldwin*, 78 F. Supp. 3d at 740  ("While the court recognizes that the express warranty claim does not need to meet Rule 9(b)'s heightened pleading standard, even under Rule 8(a), this circuit has cautioned that 'some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim.'") (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009)).  In fact, there are cases in which plaintiffs have been found to adequately plead a claim for breach of express warranty simply by attaching the warranty in question to their complaints.  *See Indus. Hard Chrome, Ltd.*, 64 F. Supp. 2d at 747 (citing *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 131 Ill. 2d 428, 460, 546 N.E.2d 580, 595 (1989)).

Further, plaintiffs describe the misrepresentations upon which they claim they relied in buying the digital smoker grills (i.e., offering safe and "hassle free" use); they state that they would not have bought the grills in the absence of these representations; and they explain that Char-Grill breached these affirmations because the grills in fact did not perform as promised.  Compl. ¶¶ 35-47, 76-79, 91-92, 96-100, 113-14.  These allegations, in which plaintiffs assert that the basis of the bargain depended on the affirmations Char-Broil made about the product, are sufficient to make out an express warranty claim.  They are far from the mere "fuzzy, non-specific, alleged statements" and legal conclusions Char-Broil says they are.  *Baldwin*, 78 F. Supp. 3d at 740; *see* Def.'s Mem. in Support of Mot. to Dismiss at 9.

14

Char-Broil further argues that plaintiffs' failure to comply with the terms of the warranty should defeat the claim. It contends that to maintain an express warranty claim, plaintiffs must allege that they made "a demand upon the defendant to perform under the terms of the warranty . . . [and] compliance with the terms of the warranty by the plaintiff." *See Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017); *Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d 620, 639 (N.D. Ill. 2023). Char-Broil contends that the terms of the warranty required plaintiffs to contact the company after receiving the defective repair kits because the warranty stated that "repair or replacement" of defective parts is a customer's "exclusive remedy." *See* Def.'s Mem. in Support of Mot. to Dismiss at 10; Def Ex. A. at 12. Char-Broil argues that plaintiffs' failure to do so should defeat their express warranty claim.

This is a skewed representation of the course of events alleged in the complaint. Plaintiffs allege that after discovering defects in their digital smoker grills, they did in fact reach out to Char-Broil by submitting their recall claims—and in the Winokurs' case, by also opening a case file with Char-Broil's customer service team. Rather, their claimed failure to contact Char-Broil did not take place until after they learned that the repair was also defective. In other words, the allegations of the complaint reflect that plaintiffs *did* comply with the terms of the warranty by communicating with Char-Broil via the recall process.

It is true that the warranty states that "[t]he manufacturer reserves the right to require that defective parts be returned . . . for review and examination." Def.'s Ex. A at 12. But Char-Broil does not contend that it ever asked plaintiffs to return the defective parts. And the warranty itself says nothing about what a customer must do when a

defective warranty repair is provided. At most, Char-Broil's contentions about the plaintiffs' obligations involve "fact-driven question[s] not appropriately resolved on a motion to dismiss." *Velez*, 670 F. Supp. 3d at 635-36 ("Under the UCC, an exclusive remedy may be set aside if it fails of its essential purpose," which occurs "when a contract's primary remedy is repair or replacement of defective parts, and this remedy fails to put the goods in their warranted condition.")

Char-Broil is not entitled to dismissal of plaintiffs' express warranty claims.

**E.    Unjust enrichment claim**

The Seventh Circuit has stated that under Illinois law, "there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Rather, a claim for unjust enrichment typically depends upon underlying allegations of unlawful or improper conduct, and thus it is "tied to the fate" of those underlying allegations. *See id.*; *see also, e.g., Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.") .

In this case, plaintiffs' unjust enrichment claim appears to be tied to their ICFA (and other consumer-statute) claims. Because these claims are sufficient to avoid dismissal, the unjust enrichment claim likewise survives if adequately pleaded. "To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that 'the defendant has unjustly retained a benefit to the plaintiff's detriment and that [the] defendant's retention of the benefit violates the fundamental principles of justice, equity,

16

and good conscience.'" *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022) (internal citation omitted).  Plaintiffs have alleged that they paid for a product that included a safety defect and did not perform to the defendant's representations of the product.  That gives rise to a plausible inference that Char-Broil unjustly retained a benefit based on the claimed wrongdoing.  This is sufficient to state a claim for unjust enrichment.

**F.    Motion to strike class allegations**

Lastly, Char-Broil moves to strike plaintiffs' class allegations, arguing that plaintiffs cannot satisfy the requirements of Rule 23(a), that this Court does not have jurisdiction over claims by non-Illinois residents who purchased their Char-Broil products outside of Illinois, and that plaintiffs lack standing to sue on behalf of non-Illinois classes.  These arguments are premature.  Plaintiffs have yet to file a motion for class certification, and thus a contention that they will seek to certify a class that is overly broad as a matter of law is speculative.  "The Supreme Court has made clear that a class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, and actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (internal quotation marks and citation omitted).  Char-Broil's preemptive attack on class certification is premature.  *See, e.g., Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *3 (N.D. Ill. Mar. 4, 2011) (citing to *In re Sony PS3 Other OS Litig.,* No. C 10–1811 RS, 2011 WL 672637, at *6 (N.D. Cal. Feb.17, 2011); *Martin v. Ford Motor Co.,* No. 10–2203, 2011 WL 570021, at *6–7 (E.D. Pa. Feb.15, 2011); *Lyons v. Coxcom, Inc.,* 718 F.Supp.2d 1232, 1236 (S.D. Cal.2009); *Romano v.*

17

*Motorola, Inc.,* No. 07–Civ–60517, 2007 WL 4199781, at *3 (S.D. Fla. Nov. 26, 2007)). This case is not one where the Court "need not delay a ruling on certification" because it is apparent that additional proceedings will "be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

### Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss for failure to state a claim, including its request to strike plaintiffs' class allegations [dkt. no. 39]. Defendant is directed to answer the amended complaint by May 22, 2025. At tomorrow's scheduled status hearing, the parties are to be prepared to propose a discovery and pretrial schedule for entry by the Court.

Date: April 24, 2025

_____
MATTHEW F. KENNELLY
United States District Judge

18